UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BETH ISRAEL MEDICAL CENTER and
ST. LUKE'S-ROOSEVELT HOSPITAL,

          Plaintiffs,

    -v-

MARK GOODMAN, *in his capacity as Fund Manager of
Local 272 Welfare Fund*, and
JOHN FAZIO, *in his capacity as Fund Manager of Local
348 Health & Welfare Fund*,

          Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 6 2013

12 Civ. 1689 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

  Plaintiffs Beth Israel Medical Center and St. Luke's Roosevelt Hospital Center (the "Hospitals") initiated this breach of contract action against the Local 272 Welfare Fund (the "Local 272 Fund") and the Local 348 Health & Welfare Fund (the "Local 348 Fund") (collectively, the "Local Funds") in the Supreme Court of the State of New York, County of New York. The Local Funds, which provide hospital and medical coverage to union members and their dependents, are both "employee welfare benefit plans" within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

  The Local 272 Fund removed this case to federal court, arguing that the Hospitals' breach of contract action is preempted by ERISA. (Dkt. # 1) The Local 348 Fund consented to removal. (*Id.*) The Hospitals subsequently moved to remand this case to state court. (Dkt. # 11) In response, the Local Funds opposed remand, and the Local 272 Fund cross-moved to sever what it contends should be two separate actions, one against the Local 272 Fund and one against the Local 348 Fund. (Dkt. #s 16, 17, 19) There is no indication that the Local 348 Fund joined

1

in the latter motion. For the reasons detailed herein, the Hospitals' motion to remand is DENIED, and the Local 272 Fund's motion to sever is DENIED.

## I. BACKGROUND

This action arises out of approximately 160 reimbursement claims made by the Hospitals to the Local Funds based on medical services rendered to the Local Funds' beneficiaries.[1] According to the Hospitals, the Local Funds failed to pay these reimbursement claims in accordance with various contracts entered into by the Hospitals and non-party MagnaCare Administrative Services, LLC ("MagnaCare").

Magnacare is a preferred provider organization ("PPO"). As a PPO, MagnaCare enters into agreements with healthcare providers, like the Hospitals, through which the providers become part of MagnaCare's preferred provider network. The Preferred Providers agree to provide healthcare services at discounted rates to persons who are enrolled in the PPO, typically through payors for medical services ("PPO Payors"), such as the Local Funds. PPO Payors enter into separate agreements with MagnaCare under which they agree to pay Preferred Providers directly for medical services rendered to their beneficiaries.

The Hospitals' breach of contract action is premised on a series of contracts that they entered into with MagnaCare beginning in 2004 (the "MagnaCare Contracts"). The Hospitals contend that the Local Funds are bound by the MagnaCare Contracts because MagnaCare entered into those agreements as the agent of, for the benefit of and/or on behalf of the Local Funds.

The Local Funds insist that the Hospitals' breach of contract action is preempted by ERISA because each of the Hospitals' reimbursement claims was either paid or denied based on

---

[1] Although the Complaint does not identify the particular reimbursement claims at issue, the Hospitals identified these claims to the Local Funds in conjunction with the filing of their motion to remand. (Pl. Mot. 13, n. 9; Barker Decl. ¶ 21; Woods Aff. ¶ 22)

2

the individual fund's plan documents, which set forth the eligibility requirements for coverage, the nature of benefits provided, limitations on those benefits, services covered, and the procedure for claiming benefits and appealing claim denials.

The Hospitals dispute that their breach of contract action is preempted, insisting that it is based entirely on the Local Funds' failure to comply with the terms of the MagnaCare Contracts.

## II.   ERISA PREEMPTION

A civil claim filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim. *See* 28 U.S.C. § 1441(a). Under the "well-pleaded complaint rule," federal subject matter jurisdiction exists "when the plaintiff's well-pleaded complaint raises issues of federal law" but not when federal preemption might simply be invoked as a defense to liability. *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (internal quotes and citations omitted). However, a "corollary of the well-pleaded complaint rule" provides that "Congress may so completely preempt a particular area of law that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* (internal quotes and citations omitted). ERISA, which "creates a comprehensive civil enforcement scheme," "completely preempts any state-law cause of action that duplicates, supplements, or supplants an ERISA remedy." *Id.*

The ERISA civil enforcement scheme is set forth in ERISA § 502(a). *See* 29 U.S.C. § 1132(a). Of relevance here is § 502(a)(1)(B), which provides that a plan participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

3

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court established a two-part test to determine whether a state law cause of action falls within the scope of, and is therefore preempted by, § 502(a)(1)(B). *Id.* at 210. Specifically, a state law cause of action is preempted by ERISA if it is brought (i) by "an individual [who] at some point in time could have brought his claim under ERISA § 502(a)(1)(B)," and (ii) under circumstances in which "there is no other independent legal duty that is implicated by [the] defendant's actions." *Id.*

In *Montefiore*, the Second Circuit explained that there are two steps under the first prong of *Davila* – the Court must consider whether "the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)" and whether "the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." 642 F.3d at 328 (emphasis in original).

Ultimately, a state law cause of action is only preempted if both of the *Davila* prongs, including both steps of the first prong, are satisfied. *Id.*

"[A] party seeking removal bears the burden of showing that federal jurisdiction is proper." *Id.* at 327. Thus, it is the Local Funds' burden to demonstrate that at least one of the reimbursement claims underlying this action satisfies both prongs of the *Davila* test.[2] *Id.* at 331 n. 11 (preemption may be established on the basis of a single reimbursement claim). As detailed below, the Local 272 Fund has satisfied this burden with respect to two categories of reimbursement claims: (1) claims that the Local 272 Fund denied as a result of the Hospitals' alleged failure to obtain pre-certification and (2) claims that the Local 272 Fund denied as a result of the Hospitals' alleged failure to timely provide required claim-processing information.

---

[2] The Court notes that it is proper, on a motion to remand, to look beyond the allegations of the complaint to the reimbursement claims themselves. *Montefiore*, 642 F.3d at 331.

4

Because these claims establish preemption, the Court need not determine whether any of the other reimbursement claims would also support preemption.

### A. *Davila* Prong One, Step One: Whether The Hospitals Are the Type of Party That Can Bring A Claim Pursuant to § 502(a)(1)(B)

Section 502(a)(1)(B) provides that a civil action may be brought by "a participant or beneficiary." 29 U.S.C. § 1132(a)(1)(B). However, the Second Circuit has held that health care providers may sue under this provision so long as the beneficiary has assigned his claim to the provider in exchange for health care. *Montefiore*, 642 F.3d at 329. Here, the Local 272 Fund has presented evidence that there was an assignment for each of the relevant reimbursement claims made against it by the Hospitals. (Barker Decl. Ex. I) Because the Hospitals do not dispute this evidence, the Court concludes that with respect to these particular reimbursement claims, the Hospitals are the type of party that could bring suit pursuant to § 502(a)(1)(b).

### B. *Davila* Prong One, Step Two: Whether The Hospitals' Breach of Contract Action Can Be Construed As A Colorable Claim For Benefits Under ERISA § 502(a)(1)(B)

Turning to the second step of the first *Davila* prong, the Court must assess whether the Hospitals' breach of contract action can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). To make this determination, the Court must consider each reimbursement claim that underlies the breach of contract action and must determine whether the claim "implicate[s] coverage and benefits established by the terms of the ERISA benefit plan." *Montefiore*, 642 F.3d at 331. In other words, the Court must ask whether the claim "*could* have been brought under ERISA." *Id.* at 328. The Court concludes that at least two categories of the Hospitals' reimbursement claims satisfy this aspect of the *Davila* test: (1) claims that the Local 272 Fund denied based on the Hospitals' alleged failure to obtain pre-certification and (2) claims

that the Local 272 Fund denied based on the Hospitals' alleged failure to timely provide required claim-processing information.[3]

These reimbursement claims "implicate coverage and benefits established by the terms of the ERISA benefit plan" in at least two ways. First, these claims arise out of services rendered to the Local 272 Fund's beneficiaries pursuant to the Fund's benefits plan. Second, these claims were denied because the Fund determined that certain prerequisites to coverage under its benefits plan – *i.e.*, pre-certification and timely provision of claim-processing information – were not met. In light of this interrelationship between the reimbursement claims and the terms of the Local 272 Fund's benefits plan, the Court concludes that the claims can be construed as colorable claims for benefits. Indeed, in *Montefiore* the Second Circuit reached this same conclusion with respect to reimbursement claims denied by the Local 272 Fund for failure to obtain pre-certification and for failure to comply with the Fund's procedures. *Id.* at 331-32.

The Hospitals nonetheless resist this conclusion. In doing so, they do not contest that the Local 272 Fund's plan documents contain the above-referenced requirements. Instead, the Hospitals primarily argue that they are entitled, under the MagnaCare Contracts, to payment of their reimbursement claims *regardless* of such requirements. However, this argument is unavailing because it simply conflates the two *Davila* prongs and, as a result, says nothing about whether the Hospitals' reimbursement claims *could* be construed a colorable claims for benefits under ERISA.

---

[3] In their reply papers, the Hospitals acknowledge that three of their reimbursement claims against the Local 272 Fund might involve coverage determinations (*e.g.*, a claim involving coverage of a newborn; a claim involving a patient's failure to provide information on coordination of benefits; and a claims involving a patient's failure to respond to an accident questionnaire). The Hospitals indicated that, if necessary, they would withdraw these claims to avoid preemption. However, as further detailed in this Order, preemption is warranted whether or not these claims are withdrawn.

This is precisely the type of confusion that the Second Circuit sought to avoid when, in *Montefiore*, it distinguished between claims "brought *solely* pursuant to an independent duty that has nothing to do with ERISA," and claims "which *could* have been brought under ERISA, but [which] *also* res[t] on another independent legal duty that is implicated by the defendant's actions." *Id.* at 328 (emphasis in original). "The former fails to satisfy the first prong of *Davila* because it does not state a colorable claims for benefits, and therefore could not have been brought under ERISA." *Id.* By contrast, "the latter fails to satisfy the second prong of *Davila*." *Id.*

As previously discussed, these particular reimbursement claims "implicate coverage and benefits established by the terms of the ERISA benefit plan" and therefore *could* have been brought under ERISA. The question of whether the MagnaCare Contracts create an *additional* right to payment is more appropriately addressed under the second *Davila* prong – a task to which the Court now turns.

### C. *Davila* Prong Two: Whether the Hospitals' Breach of Contract Action Is Founded On An Independent Legal Duty

The determination that these two categories of reimbursement claims are colorable claims for benefits "forms the ERISA-related basis for [the Hospitals' suit]." *Id.* at 332. However, the Hospitals' breach of contract action, even if premised on these claims, is only preempted if "there is no other independent legal duty that is implicated by the defendant's actions." *Id.* at 332 (quoting *Davila*, 542 U.S. at 210). In other words, preemption is defeated if "some other, completely independent duty forms *another* basis for legal action." *Id.* (emphasis in original).

The Hospitals assert that two provisions of the MagnaCare Contracts create such an independent duty. However, for the reasons detailed below, the Court concludes that neither of these contract provisions defeats preemption.

### 1. Right To Payment Of "Clean Claims"

The first contract provision relied upon by the Hospitals appears in all iterations of the MagnaCare Contracts and provides that all "clean claims" will be paid within forty-five days of their receipt. This provision does not, however, create an independent duty to pay the Hospitals' reimbursement claims because the term "clean claim" incorporates plan coverage and eligibility limitations.

Although "clean claim" is not defined in the contracts, the Hospitals allege that all parties understood the term to be consistent with New York Insurance Law § 3224-a(a), which requires prompt payment of any claim submitted on a standard form so long as the obligation to pay the claim is "reasonably clear."[4] Section 3224-a(b) of the same statute indicates that the obligation to pay is not "reasonably clear" if there is "a good faith dispute" regarding, *inter alia*, eligibility or coverage. Thus, "clean claim" incorporates the coverage and eligibility limitations of the Local 272 Fund's plan documents. As a result, the contractual duty to pay clean claims is "inextricably intertwined with the interpretation of plan coverage and benefits," and is therefore insufficient to defeat preemption. *Montefiore*, 642 F.2d at 332.

### 2. Compliance With Fund Policies and Procedures

The second contractual provision relied upon by the Hospitals provides that "MagnaCare shall not reduce or deny payment based on Hospital's failure to comply with any of MagnaCare's or Payor's policies or procedures, including but not limited to lack of notification, pre-authorization/pre-approval requirements . . . ." The Hospitals contend that this provision forecloses preemption because it creates a right to payment that is expressly independent of Fund procedures.

---

[4] Neither of the Local Funds addressed the meaning of "clean claim" in their papers.

8

An error in this argument is that the provision only appears in the 2009 version of the MagnaCare Contracts and a number of the reimbursement claims that were denied for non-compliance with Fund procedures arise out of services provided in 2008.[5] Thus, even if the Court assumes that the provision creates an independent legal duty to pay the Hospitals' reimbursement claims, the duty does not apply to all of the claims that otherwise support preemption.

*   *   *

In sum, the Local 272 Fund has identified reimbursement claims that satisfy both of the *Davila* prongs. The Court therefore concludes that preemption is proper and denies the Hospitals' motion for remand.

## III. THE LOCAL 272 FUND'S MOTION TO SEVER

The Court turns next to the Local 272 Fund's motion to sever the Hospitals' claims against it from the Hospitals' claims against the Local 348 Fund. Rule 21 of the Federal Rules of Civil Procedure permits a court to "sever any claim against a party." Fed.R.Civ.P. 21. "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988); *accord Wausau Bus. Inc. Co. v. Turner Constr. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001). "Courts may order a Rule 21 severance when it will serve the ends of justice and further the prompt and efficient disposition of litigation." *T.S.I. 27, Inc. v. Berman Enters. Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y. 1987). "[A] court considering a severance motion should weigh the following factors in making its determination: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether

---

[5] For example, claim no. 90121532 (12/12/2008 – 12/13/2008), claim no. 80911259 (8/1/2008 – 8/12/2008), claim no. 90330016 (12/18/2008 – 12/20/2008). (Barker Decl. Ex. I)

9

settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 155-56 (S.D.N.Y. 2003).

Having duly considered these factors, the Court finds that severance is not warranted at this stage of the litigation, particularly because the Local 272 Fund has identified no prejudice that would be suffered by proceeding at least through discovery on a common case management schedule.

## IV. CONCLUSION

For the forgoing reasons, it is hereby ORDERED that the Hospitals' motion to remand, Dkt. # 11, is DENIED and that the Local 272 Fund's cross-motion to sever, Dkt. # 17, is DENIED.

It is further ordered that counsel for all parties appear for an initial pretrial conference before the Court on **April 12, 2013** at **10:30 AM** in Courtroom 906 of the United States District Courthouse for the Southern District of New York, 40 Foley Square, New York, New York. Prior to the conference, counsel shall confer regarding settlement and each of the other subjects to be considered at a Fed. R. Civ. P. 16 conference.

Additionally, in accordance with the Court's Individual Rules, the parties shall submit via e-mail (NathanNYSDChambers@nysd.uscourts.gov) a Proposed Civil Case Management Plan and Scheduling Order in PDF format **no later than April 5, 2013**. The parties shall use this Court's form Proposed Case Management Plan and Scheduling Order available at the Court's website (http://nysd.uscourts.gov/judge/Nathan).

SO ORDERED.

Dated: March 26, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge